In the United States District Court
Northern District of Ohio
Western Division

FILED
2017 APR -6 AM 11: 28
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

Dante' D. Gordon

   Plaintiff

v.

Robert Van Schoyck(Magistrate Judge)
Patrick M. McGrath(Judge)
Spectrum Reporting LLC.
J. Brunner(Judge)
P.J. Doran(Judge)
J. Horton(Judge)
Maryellen O'Shaugnessy(Clerk of Courts)
Osborn(Unit Manager)(First Name Unknown)
Ruhl(CaseManager)(First Name Unknown)
Dean Mulvain(Sergeant-Sgt)
Prichard(Lieutenant)(First Name Unknown)
Management Training Corp. Medical LLC.
Management Training Corp.

Case No.
3:17 CV 0721
Judge

COMPLAINT with
Jury Demand
Injuctive relief
Declaratory Relief
Endorsed Herein

JUDGE HELMICK

INTRODUCTION:
This is an action of Retaliation, discrimination, Judicial misconduct as a
result of Plaintiff exercising his first amendment right against prison
officials, as well as interfering with Plaintiffs civil rights to deny
the Plaintiff of his 14th amendment right. In-addition this is an action
of violating Plaintiffs rights secured by the United States Constitution,
including the 4th, 8th and 14th amendment along with the related state law
claims for officials acting under the color of state law.

JURISDICTION AND VENUE
2) Plaintiff hereby incorporates by reference herein paragraph 1-above

3) This court has jurisdiction pursuant to the provisions of 28 U.S.C.§1331,
   1343, 1367, and 42 USC Sec. 1983, 1985,1986. Plaintiff further invokes
   supplemental Jurisdiction of this court prusuant to Section 1367 to hear
   and decide claims arising out of state law.

4) Venue lies in the United State District court for the Western Division
   of Ohio because a substantial part of the events occured in Marion
   Ohio.

PARTIES:

5) Plaintiff incorporates paragraphs 1-4 above by reference herein

6) Plaintiff Dante' D. Gordon (hereinafter, at times Gordon) is and was at times mentioned herein a prisoner of the State of Ohio in the Custody of the Ohio Department of Rehabilitation and Correction at Richland Correctional institution and NorthCentral Correctional Institution.

7) At all times relevant hereto Robert Van Schoyck was a magistrate Judge acting under the color of law for the Court of Claims, appointed to decide Plaintiffs case against the Ohio Department of Rehabilitation and Corrections (ODRC) and its agents/employees. He is being sued in his individual and Official Capacity.

8) At all times relevant hereto, Patrick M. McGrath was a Judge acting under the color of law for the court of claims, appointed to decide Plaintiffs case against ODRC its agents/employees, and is being sued in his Official and individaul Capacity.

9) At all times relevant hereto, Spectrum reporting has a contract with the state to transcribed, record all legal proceedings with the state in the Plaintiffs case.

10) At all times relevant hereto J.(first name unknown) Brunner was a judge acting under the color of law, to decide Plaintiffs case against ODRC and its agents/employees and is being sued in his individual capacity and official capacity.

11) At all times relevant hereto, P.J.(first name unknown) Doran was a judge acting under the color of law to decide Plaintiffs case against ODRC, its agents/employees and is being sued in his individual and official capacity.

12) At all times relevant hereto J.(first name unknown) Horton was a judge acting under the color of law to decide Plaintiffs case against ODRC and its agents/employees.

13) At alll times relevant hereto, Maryellen O'Shaughnessy was acting under the color of law, as here duty was to file all documents sent to the clerks office and to transfer legal documents to the proper desinated palces. She is being sued in her official and individual capacity.

14) At all times relevant hereto Osborn(first name unknown) was a Unit Manager working at NorthCentral Correctional Complex (NCCC) under the color of law with the authority of and on behalf of defendant MTC while in the course of his employment at MTC and/or agent of MTC and is being sued here in his official and individual capacity.

15) At all times herein, (first name unknown) Ruhl was a case manager employed by defendant MTC, working at NCCC, acted with the authority of and on behalf of defendant MTC while in the course of here employment at MTC and/or acted with the authority of and on behalf as an employee, officer and/or agent of MTC and is being sued herein in her official and individual Capacity.

16) At all times herein Dean Mulvain was a Sergeant employed by defendant MTC, working at NCCC, acted with the authority of and on behalf of defendant, MTC while in the course His employment at MTC and/or agent of MTC and is being sued herein in his individual Capacity and Official capacity.

17) At all times herein (First Name unknown) Prichard was a Lieutenant employed by defendant MTC, working at NCCC, acted with the authority of and on behalf of defendant MTC while in course of his employment at MTC and/or acted with the authority of and on behalf as a employee Lieutenanant and/or agent of MTC and is being sued herein in his individual and his official capacity.

18) At all times herein (first name unknown) Jackson was a Officer employed by defendant MTC working at NCCC acted with authority of and on behalf of defendnat MTC while in the course of their employement at MTC and or acted with the authority of and on behalf as employee, corrections officer and/or agent of MTC and is being sued herein in his official capacity as and in his individual capacity.

19) At all times herein Lorri Schuler was a institutional inspector employed by defendant MTC working at NCCC,acted with authority of and on behalf of defendant MTC while in the course of her employment and/or acted with the authority of and on behalf as an employee institutional inspector and/or agent of MTC is being sued in official and individual capacity.

20) At all times herein defendants John Does 1 through 5 (Doe) whose full names and adress es are unknown to Plaintiff presently, each was an employee of MTC acted with the authority of and on behalf of defendant MTC while in the course of their employment at MTC and/or acted with the authority of and on behalf as employees,corrections, medical personnel and or agents of MTC and are being sued herein in their individual and official capacity

21) At all times herein, defendants MTC and Medical, through its agreement contract/memorandum of understanding with ODRC and the State of OHIO and by operating s prison in the state of OHIO and pursuant to the United States constitution, the Ohio admistrative code including but not limited to Chapter 5120:1 et seq and the Ohio revised code, including but not limited to §§311 et seq., 341.01 et seq., owed a duty to provide reasonable and adequate medical care and treatment to its prisoners. Further, where applicable herein, defendants MTC and medical had a duty to protect from unreasonable foreseeble risks of harm.

## FACTUAL BASIS FOR CLAIMS

22) Plaintiff hereby incorporates by reference herein paragraphs 1-21 above by reference herein and states

23) On April 6,2015 Plaintiff was transferred back to Richaland correctional institution for a civil trial due to an action against ODRC,its employees and agents,

24) The officers that were transferring Plaintiff were denied entry to be able to pull up to the receiving department (R&D) with their van to drop the Plaintiff off. Instead Officer Steele and Officer John Doe stated let his ass walk in those schackles to R&D see how it feels.

25) The Plaintiff asked the Officer his Name, atwhich he refused to give to the Plaintiff. Then the Plaintiff was forced to walk about 60 feet to R&D shackeled from wrist to waist and anklels with the metal ankle cuffs cutting, him around the ankles causing severe pain. This was out of retaliation for Plaintiff commencing his civil action against ODRC and employees at Richland Correctional Institution.

26) The Plaintiff went to seek medical attention for the injuries he sustained from the metal shackles due to being forced to walk 60 feet, medical OFFicer John Doe refused to allow Plaintiff to seek medical attention, even after Plaintiff showed him that his ankles were bleeding due to the metal ankle shackles, cutting him.

27) On April 7, 2017 Plaintiff Gordon had a civil trial for claims of negligence Gross, negligence, reckless and or wanton conduct, intentional infliction of emotional distress, as a result of being put in segregation for two months for NO REASON AT ALL, OTHER THAN HARASSMENT, inter alia. Where execessive force was used when the Plaintiff was requesting medical care. The Plaintiff was denied medical care when mace was left on his body for 3 weeks, he was refused by prison official to wash the mace off his body, at which caused blisters burning for weeks, the Plaintiff had a loss of appetite where he did not eat for 3 weeks, he was hospitalized, there was a delay and denial in medical treatment, then Plaintiff was transferred out of retaliation for exercising his first amendment rights against prison officials, inter alia.

28) At trial Magistrate Judge Robert Van Schoyck reefused to allow the Plaintiff Gordon to litigate his case. More Specifically he denied Plaintiff to call witnesses and those who were a party/participated in the action. He allowed Institutional inspector Kelly Rose who was a witness and participant sit in on the trial proceeings as a spectator, and refused to allow the Plaintiff to cross examine IIS K.Rose or refused to force IIS K. Rose to produce requested documents, discovery material. IIS K.Rose allowed to leave the room and share testimony, evidence with the only two officer that the state requested to have, to provide testimony, that were parties in the use of excessive force. He refused to allow the Plaintiff to properly cross examine Officer Kash and Fairchild on their duties as officer, and when the Plaintiff attempted to cross examine the Officers in-regards to Admistrative code and policy Magistrate Judge Schoyck pointed his finger at the plaintiff in an intimidate manner with anger manifested on his face, threatening the Plaintiff inter alia. The Plaintiff was denied the right secured by the 14th admentment when Magistrate Judge Schoyck intervened during the course of trial to ENSURE THE STATE ADEQAUTELY DEFENDS the case and to prevent the Plaintiff from proving his case. This was discrimination, retaliation do to the Plaintiff exercising his 1st amendment rights and being black exercising his rights against white officers, that one has a history of racist acts.

29) As a proximate result of the judical misconduct, the denial of Plaintiffs 14th amendment right Plaintiff lost his civil case, Magistrate Schoyck ruled in favor of the state. Plaintiff was charged $43.00 for the civil suit and 440.87 for witnesses he was denied to cross examine. This was an act of retaliation due to the Plaintiff exercising his first amendment rights against prison official and for being black exercsing his first amendment right against white officer inter alia.

30) The Plaintiff contacted the clerk of courts Maryellen O'Shaughnessy to get transcripts around May of 2015. The clerk directed him to Spectrum reporting who has a contract with the state to record and transcribe legal proceedings.

31) Plaintiff Gordon contacted spectrum reporting about 3 to 4 times between the month of May and August. Spectrum reporting did not respond, so the Plaintiff put in an extension of time notifying the court of spectrum refusing to respond to the plaintiffs letters/request for transcripts.

32) The trial Court Judge McGrath responded ordering an extension of time and a deadline for the Plaintiff to file his objection to the Magistrates report and recommendation.

33) After no reply by spectrum reporting and with a 5 day deadline to file his objection, the PLaintiff filed his Objection with evidence and affidavit detailing not only what took place at trial but spectrum reporting not responding, to plaintiffs request. As soon as the Plaintiff put his Objection in the mail the Plaintiff was then sent a response through legal mail from spectrum reporting in-regards to transcripts.

34) Judge McGrath discriminated against the Plaintiff in refusing to acknowledge Plaintiffs affidavit, evidence, and facts that Plaintiff litigated in his objection. Judge McGrath denied Plaintiff his 14th amendment right in his decision so ODRC could win their case, denying plaintiff objection.

35) About or around November of 2015 the Plaintiff filed with the clerk Maryellen O'Shaughnessy an Appellate rule 9(c) statement due to the transcripts being unavailbale to the Plaintiff. The Plaintiff sent the clerk (1) App. R 9(c) statement to file with the trial judge and sent and extra to file with the Appellate court due to Judge McGrath not acknonwledging Plaintiffs affiadavit that he filed to object to the Magistrates report and recommendation. He sent the appellate court one to basically put them on notice, due to Plaintiff expeirencing Officials sabotaging his case.

36) The Plaintiff sent Attorney General Frank Carson a copy of the App.R 9(c) statement.

37) Judge McGrath nor Assistant Attorney General Frank Carson never responded to the App. R.9(c) statement.

38) The Plaintiff filed his brief and then about two weeks later he received from the clerk of courts a corresponce indicating that Ass. Att. General Frank Carson filed a brief, atwhich the Plaintiff never received a copy of the brief. So the Plaintiff sent a letter to the clerk requesting a copy.

39) The Plaintiff then requested for the brief to be dismissed.

40) The Appelate court returned a discriminating decision saying the Plaintiff never filed an App. R. 9(c) affidavit to the trial court and refused to look at the evidence and facts that the Plaintiff presented, so the state ODRC could win their case.

41) Someone either intercepted Plaintiff's legal mail to the courts prior to it going out that had his Appellate Rule 9(c) statement to the trial court or Clerk of Courts Maryellen O'Shaughnessy did not file nore send Plaintiff's appellate Rule 9(c) statement to the trial court judge McGrath, which is her duty as clerk. As a proximate result the Plaintiff civil rights were interferred with, he was denied access to the courts and his 14th amendment right was violated. This was a contributing factor of Plaintiffs appeal being denied.

42) The Plaintiff appealed the Tenth district court judges decision to the Ohio supreme court July of 2016 who refused to except jurisdiction, stating no constitutional violations.

43) April 8, 2015 when the Plaintiff was transferred back to NorthCentral Complex after his civil trial, where his electronics, (T.V., Fan) was withheld for about 3 weeks out of harassment for him exercising his first amendment right.

44) Once returning to NCCC the Plaintiff was directed to medical where he showed medical staff his ankles that had cuts on them due to NCCC Officers being denied to drive the van to R&D to dropp the Plaintiff off and as a result the Plaintiff was forced to walk 60 feet out of retalaition for exercing his first amendment rights, he was denied medical care by NCCC/MTC medical personnel.

45) The Plaintiff was moved to the Unit Marion A-B out of retaliation and harassment for exercising his first amendment right against prison officials. When a person goes out to court they return back to the orginal unit they came from, but the Plaintiff was peuposely moved to this unit by someone in the count office directed by someone in the admistration Marion A-B is a imitation of FURGUSON MISSOURI where the rules are targted at african americans, and those the admistration are trying to target out of retalaition for exercising their first amedment right by searches, conduct report writing, with Sgt.Mulvain being impartial denying prisoners their due process rights and equal protection of laws when hearing the condcut report, strip searching prison which would amount to sexual harassment, then making comments among white female and male officers about the size of black males penis, They unlawfully take prisoners property and refused to follow statue in doing so and the admistration would approve of this. Unit Manager Dan deskins would okay these acts as he was the unit manager of the unit and particpated with the unlawful conduct.

46) On April 16, 2015 the Plaintiff was issued a conduct report by mental health worker Jane Doe for out of place. The Plaintiff was in the computer lad doing a college assignment on April 13, 2015 and was never given a pass prior to that day. Sgt.Mulvain heard the conduct report and refused to allow the Plaintiff to call witnesses and the officer to prove the pass was dropped of the day of the appointment and on his bunkmate side of the cabinet by the an Officer that was working that day. Sgt.Mulvain stated they said you did it you did it and refused as well as gave me the wrong name of the person who wrote the conduct report, when the Plaintiff informed him he was going to address through the grievance procedure. The plaintiff was denied his 14th amendment right out of retaliation for exercising his 1st amendment right against rpsion official. IIS Schuler denied Plaintiff an appeal.

47) April 23,2015 when the Plaintiff was coming into Marion A-B unit from the law library, due to the whole Complex yard being closed down. As the Plaintiff entered the unit all african males were being directed to go to the unit bathroom to get stripped, searched.Sgt.Mulvaine,UM Deskins, Major Quintero, Sgt.Blankenship,Case Manager Curry, Case Manager Miller, were all present along with several officers that were being trained. All the white males prisoners were allowed to walk and was directed to go to the front day room. The african american males were told to perform demeaning acts, the Plaintiff and others were very upset about what was taking place When some of the african american males were refusing some of the demeaning acts by the supervising high ranking officials they were threaten with segregation and some were taken to segregation when they refused further sexual harassing acts that were taken place. A white male named Camron Smith went to segregation for the incident but yet and still all african american males were targeted. Further more prior to this incident, a white male was seen coming over the fence to get contraband and ran into Hardin C-D unit.Hardin C-D is a christen based unit with predominantly white males,no one was stripped searched that day, nor was the unit stripped searched. The Plaintiff addressed this issues through the grievance procedure, as well as he helped other prisoners address these acts of sexual harassment, racial discrimination, inter alia. The admistrative denied the issue and tried to justify why it took place, IIS Schuler denied the Plaintiff a appeal form although the Plaintiff contacted Director Gary Mohr and called prea, nothing happen, but more designed acts of retaliation and harassment due to the Plaintiff excercising his first amendment rights. This had the Plaintiff paranoid,causing emotional distress mental anguish, high blood pressure pain in his kidney.

48) April 23,2015 later on that night the plaintiff was woken up by Marion A-B Officer Clapper and Capt.Printers about 2am, talking about his coat that he used to cover his eyes from teh excessive exposure of light, as a result of being purposely moved under the light and under the camera, due to him exercising his first amendment rights. The Plaintiff wrote an informal complaint resolution(ICR) to Major Quintero about the acts of harassment, Major Quintero tried to falsly document the issue in his reponse to try and cover for these designed acts of retalaition and harasment by saying the Plaintiff was using it to cover the officer view, trying to make it a penological concern. So the Plaintiff requested that the camera footage be preserved for future legal litigation, and further more in 6 of the 10 units there are cubicle walls that go all the way around the bed area blocking officers view, the Plaintiffs area did not have any of this due to it being removed, so this is a unit rule it is only used in the units where the walls are not at, to target certain prisoners, like the Plaintiff who is a black, male exercising his first amendment rights. So there is a disparity in treatment of rpsioners. As a result the Plaintiff loss sleep, he was paranoid of further acts, he had emotional distress, mental anguish from his high blood pressure wish aggravted his kidney pain and asthma. The Plaintiff grieved the issue and was denied an appeal from

7

49) On May 12,2015 while the Plaintiff was at the law library, Case Manager Ruhl and Unit Manager Osborn searched the Plaintiff's bed area. They confiscated the Plaintiff's bed matress and was reading his mail at which the ca,aera that is directly over Plaintiff's bed area capture. When the Plaintiff came back to the unit, his bed matress was gone, his legal work was scattered around. The Plaintiff informed Officer Bright that his bed matress was gone, Officer Bright stated he called the Captain and they know his matress is missing.

50) On May 12,2015 the Plaintiff wrote an ICR to Deputy Warden of Operations DWO Taggert Boyd, in-regards to the designed retaliated acts by case manager Ruhl and U.M. Osborn. The Plaintiff stated this was intentional infliction of pain and emotional distress, cruel and unusaul punishment, inappropriate supervision pursuant to 5120-9-31, retalaition pursuant to 5120-9-31(H) as a rsult of the Plaintiff exercising his first amendment rights, addressing the racist strip search, calling prea the sexual harassment hotline.

51) DWO Taggert Boyd responded trying to cover uo for the retaliated actions lying in his response of why the matress was taken, but never had of reason of why the Plaintiff went 3 days with out a matress, moreover he never sent it to the IIS Schuler for her to investigate pursuant to 5120-9-04 The Plaintiff requested the preservation of the camera footage. He addressed the issue with IIS Schuler who agreed with him in her response but denied it. She refused to send Plaintiff appeal.

52) As a proximate result the Plaintiff suffered emotional distress,mental anguish, loss of sleep, ankle and shin injury due to sleeping in a chair, back pain, high blood presure and kidney pain,along with axiety attakcs that affected his asthma., It made the Plaintiff fear about going to the law library, leaving his bed area, using the grievance procedure to addres his claims.

53 For 3 days all the officers and supervisors on Marion A-B did not notice that the Plaintiff did not have a matress, as well as the camera footage did not capture. But if the plaintiff had a cell phone, or drugs they would have noticed that and did something as well as use the camera footage. This was clearly a designed acts of retaliation due to the Plaintiff exercising his first amendment right, especially in addressing the sexual harasssment with stripp searches of all blacks.

54) On May 13,2015 the Plaintiff was having chest pain and difficulty breathing an asthma attack, due to the emotional distress and being sleep deprive as a result of his matress being taken. The Plaintiff was admitted into the infirmary, where his blood pressure was very high, his kidney pain started to grow worst. The nurse made the Plaintiff stay for 4 hours until his blood pressure went down. The nurse stated that the Plaintiff was having a mild stroke.

55) The Plaintiff informed the nurse that he did not have a matress, she said she do not have anything to do with that. When he returned to the unit he told Sgt. Grear who said he has to kite the qautermaster. The Plaintiff told the nurse about his shin/ankle, and his kidney pain. She informed him to put in a health request form. The Plaintiff informed her he just did that today, she said he would be seen then.

56) Plaintiff put(3) more health care request forms in requesting medical care on 5-14-2015, 5-15-2015, and 5-20-2015, he received no response.

57) On 5-21-2015 The Plaintiff wrote an informal complaint resolution (ICR) as a result of all his request for medical care went unanswered by medical.

58) On 5-22-2015 the Plaintiff was then seen by a nurse, but the Plaintiff was refused treatment, for his medical ailments. The Plaintiff was seen on 5-27-2015, by Dr.Kong, "BUT" did not receive any medical treatment for his medical ailments and pain.

59) On 5-12-2015 The Plaintiff wrote a Notification of greivance (NOG) due retaliated, and discriminating acts by IIS Schuler. The Chief Inspector never responded. The grievance addressed that IIS Schuler refused to give the Plaintiff grievance forms, threatening the Plaintiff and intimidating the Plaintiff, harassing him about exercising his first amendment rights, threatening to raise the Plaintiff's security status to send him to another prison and putting him on grievance restriction as a result of him addressing the ill conduct of officers. U.M. Cantonese and U.M. Curry were present in her office and did nothing to addres the issue.

60) On May 12,2015 the Plaintiff also wrote a grievance to the chief inspector in-regards to the warden racist,discriminating, acts when the Plaintiff reported unlawful conduct of 8th amednment violations,first amendment violations to the Warden, he encouraged the acts by allowing them to take place and refusing to stop them, properly supervise,train and sicpline officers inter alia. The chief inspector never responded to the Plaintiffs NOG

61) On May 14,2016 the Plaintiff wrote a ICR and grievance to the warden in-regards to DWO Taggert Boyd as a result of him not properly training supervising, disciplining officers, encouraging an atmosphere where african americans are not protected from retaliation,racist,discriminating acts inter alia by officers as well as the Plaintiff not being protected when these acts are reported as a result of him exercising his first amendment rights. IIS Shuler denied Plaintiff NOG and refused him a appeal form.

62) On May 14,2015 the Plaintiff wrote an ICR pursuant to 5120-9-04 inappropriate supervision inter alia, to Warden Turner in-regards to Major Quintero as a result of him refusing to properly investigate, incidents, discriminating against the Plaintiff, due to him exercising his first amendment rights against Officers , being a black male and refusing to properly train,supervise, and discipline officers, thus encouraging an atmosphere that is unsafe for the Plaintiff, as a result the Plaintiff was subjected to abuse, retaliated acts inter alia. IIS Schuler denied the grievance, and refused to send the appeal form.

63) On May 17,2015 the Plaintiff wrote an ICR on Sgt.Mulvaine due to his participation of retaliating against the Plaintiff when the Plaintiff matress was taken. Sgt.Mulvaine is hands on with Marion A-B and his life centers around this unit. He did rounds and acted like he did not notice that the Plaintiff was missing a matress.Sgt.Mulvaine assaulted people that he thought had a cell phone(Tyrone Dixon) but acted like along with other officers for 3 whole days that he was unaware the Plaintiff was without a matress. He also has several informants that he relies on. As a result the Plaintiff suffered mental anguish, emotional distress, pain from kidney highblood pressure inter alia.

64) On 5-19-2015 Sgt.Mulvaine read Plaintiff a conduct report written by Officer Garnow. The conduct report was a continue act of harassment and out of retaliation, for the Plaintiff eercising his first amendment rightss. Officer Granow falsified in the conduct report stating he gave me a direct order to take a matress and that the Plaintiff slammed the door. Officer Garnow actually stated that the Plaintiff matress is over there,which was a piece of plastice, with fresh boot prints on them and dirty as if someone did this prior to the Plaintiff showing up. The Plaintiff just walked out the door, and for arguendo if the Plaintiff did slam the door it would manifest the emotional distress as a result of these retaliated acts, BUT the Plaintiff never slammed the door and no direct order was given.The Plaintiff requested Officer Garnow, and witnesses to defend the false accusations of the conduct report, pursuant to 5120-9-07 (c) but was denied equal protection and due process of laws by Sgt.Mulvaine.Sgt.Mulvaine stated he said you did it you did it. This was discrimination for being black, a male and retaliation for exercising Plaintiff first amendment rights, a continous of violation. No one answered the ICR and IIS Schuler refused to send grievance forms.

65) The Plaintiff wrote an ICR on May 22,2015, in-regards to Sgt.Mulvaine denying Plaintiff his witnesses, being partial as the hearing officer in violation of the plaintiff 14th amednemnt rights, discriminating against the Plaintiff due to him being black,a male and exercising his first amendment rights against prison officials. The Plaintiff sent the ICR to the supervisor most responsible, and it was forwarded to UM Deskins but no response was served. IIS Shuler denied the Plaintiff a NOG form.

66) May 21,2015 UM Deskins called the Plaintiff a "SNITCH" to the Plaintiff bunkmate and around a group of prisoners who were waiting around the phone area. This out of retaliation as a result of the Plaintiff exercising his first amendment rights due to him using the greivance procedure to address racist acts of sexual harassment after stripp searching all black males making them perform demeaning acts.The Plaintiff was paranoid, he felt unsafe thinking a prisoner might believe this and try to do something to him, as a result of UM Deskins defamatory comments. The Plaintiff reported the inappropriate act pursuant to 5120-9-04 inter alia, to Major Quintero who refused to forward it to IIS Schuler for her to investigate. The Plaintiff sent the ICR to UMA Craig as directed for him to investigate but it was just sent back,IIS Schuler refused to send grievance forms.

67) About or around June 23,2015 IIS Schuler called the Plaintiff to her office but before making it in her office she started yelling at the Plaintiff threatening him intimidating him so her collegues could hear her that share the same office space,and that were in there at that time such as UM Deskins, Major Quintero, DWO Boyd, Investigator Alexander, her secretary, prisoner porter. She was threatening the Plaintiff in a intimidating angry manner saying if you write another conduct report I'm sending you to seg., growling saying see if if I'm playing,I told you not to write nothing,iff your ass write another informal see what happens.

68) On June 7,2015 The Plaintiff wrote an ICR in-regards to Dr.Kong given him meloxican and denying him proper medical care. Dr.Kong gave the Plaintiff meloxican for his pain as a result of severe arthritis; meloxican aggravates Plaintiff kidney pain. Medical is refusing to give the Plaintiff surgery denying him to see a specialist, and provide proper medical care. Instead they rather monitor Plaintiff ailments and manage the pain as his health is deteriorating. The Plaintiff has developed high blood pressure as a result of being denied sugery. The progression and pain of his arthritis is getting worst and he is being denied to see a specialist. This deliberate indifference is out retaliation and discrimination due to the Plaintiff exercising his first amendmnet rights, being an african american, male. The plaintiff has been charged continously for chronic issues, HCA Donahue state this is DRC policy that they are being deliberate indifference, inter alia. IIS Schuler refused to send grievance forms.

69) On June 8,2015 the Plaintiff wrote HCA Donahue for reimbursement of the $2 co-pay charge for his chronic issues, and issues as a result of prison officials confiscating his matress. HCA Donahue refused to reimburse the Plaintiff. This was out of retaliation and discrimination for the Plaintiff exercising his first amendment right, being black and male.

70) On June 22,2015 the Plaintiff wrote a grievance against IIS Schuler for not performing her duties as IIS pursuant to 5120-9-29. She has refused to investigate report unlawful conduct of prison officials so they can be properly trained, discplined, and supervised, as a result the she has created an unsafe astmosphere where the Plaintiff was not protected from harm, denied medical care, has suffered mental angusih, emotional distress injuries, these were foreseeble risk inter alia. The cheif inspector never responded.

71) On June 22,2015 the Plaintiff wrote an ICR to DWSS Joyce in-regards to HCA Donahue being deliberate indifference to his serious medical needs, falsifying medical documents in-order to prevent treatment, and to cover up for lack of treatment inter alia, the abuse of the medical co-pay charge inter alia. DWSS Joyce sent an equivocating response stating he should not have sent her the ICR, but to IIS Schuler,; this response was incorrect and a tactic so she did not have to addres the issue.As a result she refused to properly train, supervise, discipline HCA Donahue encouraging 8th amendment violations and Plaintiff 14th amendment right. This was retakiation and discrimination do to the Plaintiff exercising his first amendment right and being a black male.IIS Schuler refused to send grievance forms.

72) On July 7,2015 as a result of all the emotional distress by prison official it put stress on Plaintiff's kidney, from high blood pressure. The Plaintiff started to have kidney pain, he was unable to eat anything, he was unable to sleep, he was throwing up bile, the Plaintiff requested medical attention from Marion A-B officers(these were the same officers that acted like they did not know plaintiff did not have a matress for 3 days) Marion A-B Officer Jackson and Jane Doe. They refused to call medical and instead went about there business refusing to notice Plaintiff condition. About 3hrs later the Plaintiff condiction got worst as he strated throwing up even more, as the officers just counted around him, ingnoring the Plaintiff. Several prisoners got the Plaintiff a wheel chair and started to get upset at the Officers for them ignoring the Plaintiff medical condition. They demanded for there supervisors to be called and the officers

11

continued 72-
called someone over the phone. The Plaintiff had to wait until after 11:count to be wheeled chaired down to medical by a prisoner. The Plaintiff was yelling in pain very loudly due to the pain. Lt.Prichard was the officer at medical and he tried to impress a female staff,by telling the Plaintiff it ain't nothing wrong with you get up. Then he told her to leave and refused to allow medical to treat plaintiff and provide any medical care.Lt.Prichard stated were you doing crack because all blacks do crack.Plaintiff painfully responded saying no they don't he said yes yall ghetto ass do.The Plaintiff laid on the bench in pain yelling then fell to the floor.Lt.Prichard then got a wheel chair and put the Plaintiff in it. He then wheeled chaired the Plaintiff to a room but as they were going through the entrance Lt.Prichard rammed the Plaintiff knee on the side of the entrance and twisted the Plaintiff's ankle as his foot got caught on the entrance. The plaintiff yelled in pain and asked him what is he doing, Lt.Prichard sarcasticly replied OH MY BAD. the Plaintiff was denied medical care all night and was in pain unable to sleep, as he kept throwing up bile.

73) About or around 9am July 8,2015 the Plaintiff was then driven to the outside hospital toledomedical center.

74) While at toldeo the Plainitff was given pill form medicatioon for pain by Dr.Jain Samay who knows the pills aggravates the Plaintiffs kidney because his kidney is blocked and cannot filter the medication. The Plaintiff is being denied a stint placement do to cost by MTC corproation and out of retalaition The Plaintiff usually receives liquid medication in his I/V. Dr.Jain Samay an agent of MTC has been denying surgery and proper medical care since 2012 for the plaintiff kidney pain. The Plaintiff was transferred to MTC/northcentral out of retaliation for exercising his first amednement rights and prior to leavingOHIO state medical stated he needed surgery but as stated he was denied out of retalaition and then transferred into private complex custstody where he has been continued denied proper medical care. The plaintiff used the grievance process to address these issues of deliberate indifference as well as wrote the state medical board, the department of justice and had his sister calledtoldeo medical to file a complaint, about Dr.Jain Samay discriminating in treatment, and deliberate indifference to his serious medical needs. Dr.Jain Samay even refused to remove the order to allow the Plaintiff to eat, atwhich this is the second time he done this. The Plaintiff even complained about it to prison official using the grivance process. As a rsult the Plaintiff did not receive proper medical care and when he left the pills started to aggravate his kidney causing severe pain and discomfort.

75) When the Plaintff returned back to the prison July 10,2015 at midnight he still did not eat anything, he was ordered to recevie 36 tylenol 3 due to the prison not giving perkasets out. The Plaintiff was given 2 tylenol 3 then the male nurse john doe said they were discontinued.As a proximate result the Plaintiff had severe admominal cramps,kidney pain, discomfort, he did not eat anything until July 11,2015 and had difficulty holding the food down. The Plaintiff put in a health request form and he was never seen by medical. He put 2 more request for medical care and medical never answered the request. The Plaintiff had a difficult and painful time going to the law library, to the dinning hall. This was out of retalaition for exercising his first amendment right, being black a male. This was deliberate indifferrence to his serious medical needs

CAUSE OF ACTION

COUNT 1: 1st amendment ,14th amendment violation,retaliation,discrimination, Judicail misconduct, interferring with civil rights[Burda v Sexton] 2012 U.S. Dist. LEXIS 13155, [Burnett v Grambley] 520 U.S. 899 904-05117 S.Ct 1793 138 L.Ed 2d (1997), [Bell v Johnson ] 308 F.3d 594 (6th Cir.2002), [Thaddeus-X v Blatter] 110 F.3d 1233 (6th Cir. 1997), [King v Zamira] 788,F3d 207,2015 US App.LEXIS 9022

76)The Plaintiff re-alledges and incorporates be reference paragraphs 1through 75 as if fully rewritten herein;

77) The above detalied conduct was caused by Schoyck, McGrath spectrum reporting Brunner,Doran, O'Shaugnessy,

78)As a result the Plaintiff lost his civil suit against ODRC,his appeal, and was charged excessive fees out of retaliation for the Plaintiff exercising his first amednemnt right against ODRC, and being a black male

COUNT 2: 1st amendment violation, 14th amedment violation, retalaition, [Bell v johnson], [Thadeus-X v Blatter], [King v Zamiara]

79) The Plainitff realleges and incorporates be reference paragraphs 1-through 78 as if fully rewritten herein;

80) The above detailed conduct of Osborn,Ruhl,Mulvaine, Prichard and MTC medical were as result of maintained policy, custom and practices, which caused violations of Plaintiffs constituional rights.

81) The Plaintiff alleges as a result of Plaintiff exercising his first amendment right against prison officials with using the grievance procedure and lawsuits, designed acts of retalaition were taken against him, he was denied medical care, his matress was taken, when these acts were reported he was dsicriminated against and not protected from the harm, he sustained injuries and these retaliated acts aggravated existing injuries where the Plaintiff had to be hospitalized for, he was denied equal protection and due process of laws with the use of a bogus condcut report was written inter alia.

COUNT 3: 8th amendment and retaliation vilations, [Estell v Gamble], [Farmer v Brennan], [Thaddeus-X v Blatter], [Bell v Johnson]

82) the Plaintiff realleges and incorporates by reference paragraphs 1-through 81 as if completely rewritten herein;

83) The above detailed conduct of osborn, Ruhl, Mulvaine,Prichard and MTC Medical were a result pf maintained policy,customs, practices which caused violations of plaintiffs constitutional rights.

84) As a proximate result of osborn ruhl action when taking the Plaintiffs matress for 3 days the Plaintiff had a loss of sleep, a slight stroke, mental anguish,shin/ankle injury, back pain and aggravation to his kidney inter alia.

85) As a proximate result of prichard actions Plaintiff was left in pain denied medical care and was not provided medical care until the next day.This is a result of a policy,custom and practice,as well out of retaliation for exercising 1st amendment right, being a black male

86) As result of MTC medical the Plaintiff is being denied surgery and proper medical care for his kidney, he was denied medical care, his medical condition is detioriating, he was not given the medication that he prescribed which is due to a policy,custom and practice, as well as out of retaliation for exercising his first amendment right, for being a black male, and to increase profits for share holders inter alia.

COUNT 4-punitive damages
87) Plaintiff re-alleges and incorporates by reference paragraphs 1-through-86 as if completely rewritten herein

88) Plaintiff alleges that alldefendants, medical themselves, spectrum reprting themselves and or through staff agents and or emplyees acted with reckless indifference to the Plaintiff federal protected rights(1st amendment, 8th amendment and 14the amendment through the events set forth herein)

89) As a direct proxiamte result Schoyck,spectrum reporting,McGrath,Brunner Doran,Horton Mary Yellen caused the Plaintiff civil suit to be lost.

90) As a direct proximate result of Osborn,Ruhl,Mulvaine,Prichard and MTC Medical, it caused injuries, aggravated existing medical ailments, caused the Plaintiff to be denied medical treatment, and to be hospitalized due to retaliated acts inter alia.

COUNT 5-Declaratory judgment

91) The Plaintiff re-alleges and incorporates by reference paragraphs 1-through-90 as if completely rewritten herein,

92) The Plaintiff request for the court to delcare that his 14th amendment rights have been violated in a tort against ODRC

COUNT-6-Injunctive relief
93) The Plaintiff re-alleges and incorporates by reference paragraphs 1-though-92 by reference as if completely rewritten herein,

94) The Plaintiff request to be relived from state Judgment in suit against ODRC, and court cost due to his constitutional rights being violated, a reverse judgment and to be awarded damages,to see a specialist,for kidney pain,arthriis and asthma. To be given an inhaler immediately and a restraining order against Dr.Jain Samay.

WHEREFORE THE Plaintiff Dante' D. Gordonprays for judgment against defendants Jointly a severally as follows;

A.Count 1: for compensatory and stautory damages in excess of $75,000

B.Count 2 For compensaotry and statutroy dmages in the amount in axcess of $75,000

C. Count 3 For compensatory damages and statutory damages in the amount in excess of $75,000
D. COUNT 4: punitive damages in the amount of $700,000
E. Cost expenses, prejudgment interest and any other relief this court deems appropriate

14


Respectfully submitted

*[signature]*
Dante' D. Gordon

Jury Demand Endorsed Herein

Plaintiff Demands a jury trial on all issues triable to them.

*[signature]*
Dante' D. Gordon

