UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Dante' D. Gordon,                                    Case No. 3:17-cv-721

        Plaintiff

        v.                                            MEMORANDUM OPINION
                                                                              AND ORDER

Magistrate Judge Robert Van Schoyck, et al.,

        Defendants


## I.    INTRODUCTION & BACKGROUND

*Pro se* Plaintiff Dante' D. Gordon, an Ohio state prisoner, initiated this § 1983 action while incarcerated at North Central Correctional Complex ("NCCC") on April 6, 2017. (Doc. No. 1). Since that time, the court has granted Gordon leave to proceed *in forma pauperis*, (Doc. No. 7), and leave to amend his complaint twice. (Doc. Nos. 8 & 21). Gordon filed his Second Amended Complaint on August 8, 2018. (Doc. No. 22). Since that time, I denied Gordon's third request to amend the complaint, which was bare of any new allegations.[1] (Doc. Nos. 33, 52). Like the third request, his pending request contains nothing more than a conclusory desire to amend. (Doc. No. 67). Therefore, Gordon is denied leave to amend the complaint for a third time. (*Id.*). The Second Amended Complaint governs the case. (Doc. No. 22).

---

[1] While pursuing an appeal of my order denying him leave to amend the complaint a third time, Gordon filed an objection to my order. (Doc. No. 71). Defendants moved to strike said objection. (Doc. No. 73). But my previous order stands – because Gordon failed to state any new factual allegations which would require amendment of the complaint, leave to amend was properly denied.

In his thirty-five page, single-spaced Second Amended Complaint, Gordon recounts incidents that occurred at NCCC from April 5, 2015, through approximately December 10, 2016. (Doc. No. 22). He also discusses a civil suit he brought in the Ohio Court of Claims in or around 2015, the decision of which he appealed to the Tenth District Court of Appeals and eventually the Supreme Court of Ohio, which declined jurisdiction in July 2016. (*Id.* at 7-10). Based upon these factual allegations, Gordon asserts three § 1983 claims. Gordon's fourth, fifth, and sixth claims merely seek forms of relief and are not, themselves, independent causes of action.

Gordon first claims Defendants Magistrate Judge Robert Van Schoyck, Judge Patrick M. McGrath, Judge Jennifer Brunner, Judge Julia Dorrian, and Judge William Klatt violated his First and Fourteenth Amendment rights. (Doc. No. 22 at 32). Essentially, Gordon asserts these Defendants acted in a discriminatory and retaliatory manner when ruling in favor of the Ohio Department of Rehabilitation and Correction ("ODRC") rather than in Gordon's favor in his Court of Claims suit and charging Gordon fees for the suit thereafter. (*Id.* at 8-9, 32). These Defendants move to dismiss this claim. (Doc. No. 53).

Gordon's second claim again alleges a violation of his First and Fourteenth Amendment rights. (Doc. No. 22 at 32). This claim is lodged against Defendants Unit Manager fnu-Male Osborn, Case Manager fnu Ruhl, Sergeant Dean Mulvain, Lieutenant fnu Prichard, and Management and Training Corp, LLC, Medical. (*Id.*). Gordon claims these Defendants retaliated against him for using the prison grievance policy. (*Id.*). The alleged retaliation took the form of deprivation of his mattress for three days, perceived additional discriminatory treatment, and denial of certain medical care. (*Id.*).

In his third claim, asserted against the same Defendants as the second, Gordon asserts the allegedly retaliatory conduct discussed in the second claim resulted in Eight Amendment violations. (*Id.* at 32-33). Specifically, Gordon claims that, because he was deprived of a mattress for three days,

he suffered various medical conditions. (*Id.*, ¶¶ 142-43). Gordon also alleges he was denied proper treatment for various medical conditions. (*Id.* at 33, ¶¶ 144).

It is unclear whether the remaining Defendants are included within the second and third claims. But all MTC Defendants move for summary judgment on these claims. (Doc. Nos. 36 & 59). Defendants Gary Mohr and Roger Wilson, who are listed only in Gordon's claim to punitive damages, also filed a motion for judgment on the pleadings. (Doc. No. 56).

Although Gordon has filed several motions since Defendants filed their dispositive motions, he has failed to substantively respond to the Defendants' motions.

### III. STANDARD

Rule 12(c) motions for judgment on the pleadings are subject to the same standard as a Rule 12(b)(6) motion to dismiss. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly* 550 U.S. 544, 570 (2007)). The factual allegations in the pleading must be sufficient to raise the right to relief above the speculative level on the assumption that all the allegations in the Complaint are true. *Bell Atl. Corp.*, 550 U.S. at 555. The plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-Defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading that offers legal conclusions or a simple recitation of the elements of a cause of action will not meet this pleading standard. *Id.*

In reviewing a complaint, I must construe the pleading in the light most favorable to the plaintiff. *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998). Further, I must construe this *pro se* Complaint liberally. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

But because Gordon filed this action *in forma pauperis* under 28 U.S.C. § 1915(e), I must dismiss *sua sponte* any claim that is frivolous or "fails to state a claim upon which relief can be granted." 28 U.S.C. § 1915(e)(2)(B). That is, I must dismiss any claim that lacks an arguable basis in law or fact, in that it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). And I must dismiss any claim that fails to meet "the dismissal standard articulated in *Iqbal* and *Twombly*" and outlined above. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).

## IV. DISCUSSION

### A. JUDICIAL DEFENDANTS

Defendants Magistrate Judge Robert Van Schoyck, Judge Patrick M. McGrath, Judge Jennifer Brunner, Judge Julia Dorrian, and Judge William Klatt filed a motion to dismiss on various grounds including judicial immunity and Eleventh Amendment sovereign immunity. (Doc. No. 53).

It is well-settled that "state judges are absolutely immune from liability for their judicial acts." *Briscoe v. LaHue*, 460 U.S. 325, 334 (1983) (citations omitted). This absolute "judicial immunity is an immunity from suit, not just from ultimate assessment of damages" and cannot be "overcome by allegations of bad faith or malice." *Mireles v. Waco*, 502 U.S. 9, 11 (1991).

But judges are not immune from liability for: (1) "nonjudicial actions, *i.e.,* actions not taken in the judge's judicial capacity;" or (2) "actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Id.* at 11-12. Gordon does not allege the judicial Defendants in this case acted in the "complete absence of all jurisdiction." Further, I find no colorable basis to make such an assertion. Therefore, judicial immunity will be overcome only if Gordon alleges the Defendant judges took "nonjudicial actions."

Whether an act is "judicial" depends on the "nature of the act itself." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). Relevant considerations for this determination include whether the act was "a

4

function normally performed by a judge" and whether the parties "dealt with the judge in his judicial capacity." *Id.* The facts alleged in Gordon's Second Amended Complaint relate only to Gordon's dealing with the Defendant judges in their judicial capacity while performing functions normally performed by a judge. Specifically, the facts alleged regarding Defendant Magistrate Judge Robert Van Schoyck relate to his conduct during Gordon's trial in the Court of Claims and Judge Van Schoyck's ultimate ruling. (Doc. No. 22 at 8, ¶¶48 & 49). Those facts relating to Defendant Judge Patrick M. McGrath also relate to Judge McGrath's judicial decisions to grant Gordon an extension and ultimately deny Gordon's objection. (*Id.* at 9, ¶¶ 52, 54, 55). Finally, Gordon alleges no facts as the Tenth District of Ohio Court of Appeals Judges, other than a brief reference to his appeal. (*Id.* at 10, ¶ 62).

Because Gordon's claim against the Defendant judges relates exclusively to their "judicial acts," absolute judicial immunity bars this § 1983 claim against the state court judge Defendants in their individual capacities. Further, because state judges are state officials entitled to Eleventh Amendment sovereign immunity, Gordon's claim for monetary damages against these Defendants in their official capacity is barred as well. *See McCormick v. Braverman*, 451 F.3d 382, 399 n. 16 (6th Cir 2006) (finding state judges are state officials entitled to Eleventh Amendment sovereign immunity); *see also Cady v. Arenac Cnty.*, 574 F.3d 334, 344 (6th Cir. 2009) (distinguishing "official capacity" claims seeking damages from those seeking prospective injunction or declaratory relief).

Finding judicial and sovereign immunity bars Gordon's § 1983 claim against these Defendants in both their individual and official capacities, presented as Count One, I see no need to address the various other arguments presented in Defendants' motion. Defendants' motion is granted as a matter of law, (Doc. No. 53), and Gordon's motion for an extension to oppose the motion, (Doc. No. 65), is denied as moot.

5

**B.     DEFENDANTS MOHR & WILSON**

Defendants Director Gary Mohr and Chief Inspector Roger Wilson filed a Rule 12(c) motion for judgment on the pleadings of all claims asserted against them in their individual and official capacities. (Doc. No. 56). Although Mohr and Wilson are listed as Defendants in only Count Four of the Second Amended Complaint for punitive damages, it appears that the allegations against the two are based upon their capacity as supervisors and the manner in which Gordon's multiple grievances were denied. (Doc. No. 22 at 3, 11, 19, 24, 27-28, 30-31, 33, ¶¶ 13, 14, 67, 105, 118, 123, 125, 130, 132, & 148).

Like the state judge Defendants, prison official Defendants Mohr and Wilson are entitled to Eleventh Amendment immunity from damages claims asserted against them in their "official capacities." *See, e.g., Wolfel v. Morris*, 972 F.2d 712, 718-19 (6th Cir. 1992).

As to any claim in their individual capacity, Mohr and Wilson cannot be liable for a § 1983 claim "premised solely on a theory of respondeat superior, or the right to control employees." *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012). Rather, any liability under § 1983 must be "based only on their own unconstitutional behavior." *Id.* "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 874 (6th Cir. 1982).

Here, Gordon alleges he: (1) contacted Mohr after another Defendant denied him an appeal form of a previously-denied grievance; (2) wrote Mohr a letter about alleged retaliation that Mohr forwarded to Wilson; (3) sent Mohr a copy of evidence that his mail had been received late; and (4) twice sent Mohr a copy of an informal complaint resolution ("ICR") requests filed elsewhere. (Doc. No. 22 at 11, 19, 24, 28, 30-31, ¶¶ 67, 105, 118, 125, 130). As for Wilson, Gordon alleges Wilson failed to respond to the letter Mohr forwarded to Wilson as well as two communications from

Gordon himself. (*Id.* at 22, 27, 31 ¶¶ 105, 123, 132). These allegations do not give rise to relief since the Sixth Circuit has found that "[t]he 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)).

Like in *Shehee*, Gordon's allegations regarding Mohr and Wilson "involve their denial of his administrative grievances[,] their failure to remedy the alleged retaliatory behavior[,]" and failure to intervene on his behalf. 199 F.3d at 300. Because Gordon fails to state any facts to suggest Gordon or Mohr "directly participated, encouraged, authorized or acquiesced in the claimed retaliatory acts[,]" any § 1983 claim against Gordon and Mohr in their individual capacities must fail. *Id.* Therefore, Gordon and Mohr's motion for judgment on the pleadings is granted as a matter of law. (Doc. No. 56). Because the claims against Gordon and Mohr are dismissed on these grounds, I need not address their alternate arguments for judgment on the pleadings.

**C.**     **SPECTRUM REPORTING LLC**

Although Spectrum Reporting LLC did not file a dispositive motion here, I must dismiss *sua sponte* any claim that is frivolous or "fails to state a claim upon which relief can be granted." 28 U.S.C. § 1915(e)(2)(B). In this case, Gordon alleges that, in May 2015, Spectrum Reporting LLC, who was contracted by ODRC to transcribe all legal proceedings in his case, failed to timely send him a transcript for a civil appeal. (Doc. No. 22 at 3, 9, ¶¶ 9, 51, 53). Gordon claims he did not receive a response from Spectrum until after he mailed his "objection." (*Id.* at 9, ¶ 53). Gordon states no facts regarding the substance of this response. Because Gordon failed to state facts to indicate whether a transcript existed or why the transcript was delayed or denied, I must conclude Gordon failed to allege sufficient facts to state a plausible § 1983 claim. Even if he had alleged these facts, there is little chance this claim against Spectrum would state a plausible claim for relief. *See, e.g.*, *Hays v. Newsom*, 3 F. App'x 270, 271-72 (6th Cir. 2001) (There is no constitutional right to a

7

transcript to prepare for post-conviction proceedings or a transcript that does not exist.); *Warren v. Doe*, 28 F. App'x 463, 464 (6th Cir. 2002) (A negligent failure to provide a transcript does not violate constitutional rights.). Therefore, the claim against Spectrum must be dismissed *sua sponte*.

### D. MTC DEFENDANTS

The MTC Defendants move for summary judgment on all claims. Summary judgment is generally appropriate "at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b). But "[i]n cases where an inmate alleges deliberate indifference but the record demonstrates that the inmate received medical attention and is, in essence, filing suit because he disagrees with certain treatment decisions made by the medical staff, the defendant is entitled to summary judgment." *Allison v. Martin*, No. 09-10099, 2009 WL 2885088, at *6 (E.D. Mich. Sept. 2, 2009) (citing Sixth Circuit cases); *see also Alspaugh v. McConnell*, 643 F.3d 162, 168-69 (6th Cir. 2011) (granting pre-discovery summary judgment on a medical deliberate indifference claim based upon medical records produced by the state which "demonstrate[d] as a matter of law that medical personnel were not deliberately indifferent to [the prisoner's] medical needs.").

Because discovery has not been conducted as to Gordon's First Amendment retaliation claim and his Eighth Amendment conditions of confinement claim, I will not consider any evidence put forth by the MTC Defendants as to these claims, specifically the grievances submitted. (*See* Doc. No. 36-7). Instead, I will consider the MTC Defendants' motion for summary judgment as to these claims to be a motion for judgment on the pleadings. But because Gordon's Eighth Amendment deliberate indifference claim challenges the medical treatment Gordon received, I will consider the medical records submitted by the MTC Defendants, as discussed below, to determine whether the MTC Defendants are entitled to summary judgment on that claim alone.

For the Eighth Amendment deliberate indifference to medical needs claim, summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact and

that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant, *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008), and all reasonable inferences are drawn in the nonmovant's favor. *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

**1.     Collateral Estoppel**

MTC Defendants first argue that, because of the judgment by the Ohio Court of Claims, the claims against them should be barred by the doctrine of collateral estoppel. (Doc. No. 36 at 12-17). Collateral estoppel precludes "relitigation in a second action of an issue or issues that have been actually and necessarily litigated and determined in a prior action." *Goodson v. McDonough Power Equip., Inc.*, 443 N.E.2d 978, 981 (Ohio 1983). Because the relevant judgment here was issued by the Ohio Court of Claims, I must apply Ohio collateral estoppel law to determine the preclusive effect of that judgment. *McAdoo v. Dallas Corp.*, 932 F.2d 522, 524 (6th Cir. 1991) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75 (1984)). Accordingly, to invoke collateral estoppel, the MTC Defendants must "prove that the identical issue was (1) actually litigated, (2) directly determined, and (3) essential to the judgment handed down in the prior action." *Buckeye Union Ins. Co. v. New England Ins. Co.*, 720 N.E.2d 495, 501 (Ohio 1999).

The Ohio Court of Claims action centered around Gordon's allegations related to the confiscation of his mattress, the effect of the three-day deprivation of his mattress on his health, and the prison's treatment – or lack thereof – of those resulting ailments. (Doc. No. 36-2). Based upon those allegations, Gordon asserted claims against ODRC of negligent hiring, failure to protect from

9

harassment by prison officials, race discrimination, intentional infliction of emotional distress, negligence, and recklessness. (*Id.*). Gordon did not address the numerous other medical conditions for which he has allegedly received inadequate treatment unrelated to the mattress incident that he discusses in the Second Amended Complaint in this action. Further, although Gordon attached several grievances alleging retaliation and constitutional violations, these allegations are absent from his Ohio Court of Claims Amended Complaint itself. (*Id.* at 14, 28, 34, 39-42).

Ultimately, the Ohio Court of Claims dismissed the action, finding Gordon's negligence and harassment claims were not actionable because they "stem[med] solely from his allegations of violations of departmental policy and prison regulations." (Doc. No. 36-3). The court also stated, "[i]nsofar as plaintiff claims constitutional and civil rights violations, it is well-established that the Court of Claims lacks jurisdiction to consider constitutional claims." (Doc. No. 36-3 at 4). The Ohio Court of Appeals upheld the dismissal and "agree[d] that the Court of Claims lacks subject-matter jurisdiction over Gordon's constitutional claims." (Doc. No. 36-4 at 6).

While it is true that Gordon previously raised the mattress-related facts before the Ohio Court of Claims, any constitutional issues associated with these facts were expressly excluded from that court's determination, as the Ohio Court of Claims found it lacked jurisdiction to adjudicate these claims. Therefore, even if the issues here were identical to those presented before the Ohio Court of Claims, none of the constitutional issues presented in this action were actually litigated, directly determined, and essential to the judgment in the Ohio Court of Claims. As such, collateral estoppel does not apply.

**2.      First Amendment Retaliation**

"To state a claim for relief under § 1983 for a First Amendment retaliation claim, a plaintiff must show that: '(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that

10

conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.'" *King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

Here, Gordon alleges that the MTC Defendants retaliated against him because he exercised his First Amendment right to utilize the prison grievance procedure and file suit in the Court of Claims. (Doc. No. 22 at 32). The alleged retaliation took the form of denial of medical care, confiscation of his mattress, additional discrimination, restricted access to the grievance procedure, and "a bogus conduct report." (*Id.*).

There is no dispute that an inmate has the First Amendment right to file non-frivolous grievances. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *Lewis v. Casey*, 518 U.S. 343, 353 n.3 (1996). "Abusive or manipulative use of a grievance system would not be protected conduct." *King*, 680 F.3d at 699. The MTC Defendants argue the numerous grievances and ICRs Gordon filed were frivolous and, therefore, not protected activity. While filing numerous grievances and ICRs based upon the same conduct may be frivolous, at this stage in the litigation, I cannot conclude *all* grievances and ICRs filed by Gordon were frivolous as the MTC Defendants assert. Therefore, taking the facts stated in the Second Amended Complaint as true, I must conclude Gordon has pled sufficient facts to plausibly state he engaged in First Amendment protected conduct.

Even so, Gordon's First Amendment retaliation claim must fail because he cannot establish the second element. First, modified access to the grievance procedure is not an adverse action giving rise to a retaliation claim. *See Kennedy v. Tallio*, 20 F. App'x 469, 471 (6th Cir. 2001). Even considering the remaining allegedly-retaliatory actions, none rise to the level required to establish a First Amendment violation because none of these acts deterred Gordon from continuing to engage in protected activity by filing grievances and ICRs. *See, e.g., Kennedy*, 20 F. App'x at 471; *Keenan v. Daniel*, 63 F. App'x 180, 182 (6th Cir. 2003).

11

This also was the case in Gordon's previous case before Judge David Katz in 2015. *See Gordon v. Mohr*, 2015 WL 4275547 (N.D. Ohio July 14, 2015). Specifically, when considering Gordon's First Amendment retaliation claims, Judge Katz stated, "[e]ven assuming the plaintiff has sufficiently alleged the first and third elements," "[t]he plaintiff's complaint on its face indicates he was not deterred from engaging in protected conduct as he clearly alleges he continued to file many institutional grievances (non-frivolous or otherwise) during and after the alleged retaliatory conduct of defendants." *Id.* at *5 (citing cases). Because Gordon has not alleged any adverse action was taken against him which would deter a person of ordinary firmness from continuing to engage in that conduct, his First Amendment retaliation claim must fail as a matter of law.

**3. Eighth Amendment Claims**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. Amend. VIII. To state a viable Eight Amendment claim, the prisoner must allege facts to establish both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong requires a prisoner show "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* The subjective prong requires a showing that the defendant knew of and disregarded an excessive risk to inmate health or safety – "the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011) (quoting *Farmer*, 511 U.S. at 837).

***i.*** ***Conditions of Confinement***

The Supreme Court has cautioned that Eighth Amendment conditions-of-confinement violations are found only in cases where the conditions "involve the wanton and unnecessary infliction of pain" or are "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). That is, to be considered "sufficiently

12

serious" for purposes of the objective prong, the inmate must have been denied "'the minimal civilized measure of life's necessities.'" *Farmer*, 511 U.S. at 834 (quoting *Rhodes*, 452 U.S.at 347); *see also Spencer v. Bouchard*, 449 F.3d 721, 728 (6th Cir 2006), *abrogated on other grounds by Jones v. Bock*, 549 U.S. 199 (2007). When determining whether the conditions of confinement rise to an Eighth Amendment violation, the court must consider the "circumstances, nature, and duration of [the] deprivation." *Spencer*, 449 F.3d at 728.

In this case, Gordon claims that, on May 12, 2015, Defendants Case Manager Ruhl and Unit Manager Osborn searched his room and confiscated his mattress. (Doc. No. 22 at 12, ¶ 69). Gordon alleges he was without a mattress for three days, during which time he slept in a chair. (*Id.* at 12, ¶¶ 71, 72). Although sleeping on a chair is not ideal, three days without a mattress is not a "sufficiently serious" deprivation giving rise to an Eighth Amendment violation. *See, e.g.*, *Freeman v. Miller*, 615 F. App'x 72, 77-78 (3d. Cir. 2015) (holding seven days without a mattress did not violate the Eighth Amendment). Therefore, the MTC Defendants are granted judgment on the pleadings as to this claim.

### ii. Deliberate Indifference to Medical Needs

Before considering the substance of the claim itself, I will briefly address the medical records filed under seal by the MTC Defendants in support of summary judgment. (Doc. No. 50). Gordon moves for a protective order from the disclosure of these records to the MTC Defendants' attorneys, claiming physician-patient privilege. (Doc. No. 60).

A similar situation occurred in *Boddie v. Cranston*, 181 F.3d 99 (Table) (6th Cir. 1999). In *Boddie*, prison-medical-professional defendants moved for summary judgment on the *pro se* prisoner plaintiff's Eighth Amendment medical malpractice claim. *Id.* at *1. In support of the motion, the defendants introduced the plaintiff's medical records. *Id.* The plaintiff moved to strike these records, asserting physician-patient privilege. *Id.* Like Gordon, the plaintiff in *Boddie* also argued

13

"the defendants violated his privacy rights by releasing his medical records." *Id.* But the Circuit denied the plaintiff's motion to strike because "[a] federal court considering a 42 U.S.C. § 1983 claim applies the federal common law of privilege[, and t]here is no federal physician-patient privilege." *Id.* (citing Fed. R. Evid. 501; *Hancock v. Dodson,* 958 F.2d 1367, 1372-73 (6th Cir. 1992)).

In accordance with *Boddie*, I find there is no privilege that would prevent disclosure of Gordon's medical records to the MTC Defendants' attorneys who used them to defend against Gordon's Eighth Amendment medical malpractice claim. *See, e.g., Williams v.* Birkett, No. 14-12755, 2015 WL 5337118 (E.D. Mich. Sept. 14, 2015) (ordering production of medical records in an Eighth Amendment medical malpractice claims because there is no recognized federal physician-patient privilege and "[b]y alleging that Defendants violated his Eighth Amendment rights by failing to provide constitutionally adequate medical care, Plaintiff has placed his medical record squarely at issue."). Therefore, Gordon's motion regarding privilege is denied, (Doc. No. 60), and these medical records may be considered.

I turn now to the Eighth Amendment medical claim itself. An inmate claiming prison officials violated the Eighth Amendment must show the officials acted with deliberate indifference to the inmate's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). Prison officials show a deliberate indifference to a prisoner's medical need if they intentionally delay or deny access to medical care for a serious medical need. *Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 539 (6th Cir. 2008). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).

In his third claim, Gordon alleges several MTC Defendants acted with deliberate indifference to his medical needs related to his asthma, kidney issues, and musculoskeletal pain.

First, Gordon states Defendants acted with deliberate indifference by taking away his inhaler and prescribing a breathing treatment for his asthma instead. (Doc. No. 22 at 26-27, 29, 31). But because Gordon received treatment for his asthma, he was not denied treatment and I will not second guess the adequacy of the treatment he did receive. (Doc. No. 22 at 26-27, 29, 31; Doc. No. 50 at 12-13, 16-17, 25, 27-29). Therefore, I conclude there was no deliberate indifference to Gordon's asthma.

Second, with respect to his kidney issues, Gordon alleges he is being denied surgery, a renal diet, medication for pain, and a consultation with a specialist. (Doc. No. 22 at 33). But the medical records show that Gordon saw a urologist at the University of Toledo Medical College, who recommended a nephrectomy – a surgical procedure that Gordon continuously refused. (Doc. No. 50 at 30, 32). Gordon disagreed with this prescribed treatment and maintained that he should be given a stent instead. (*Id.* at 32). After examining Gordon, Physician Assistant Tyler Stuckey agreed with the urologist but found Gordon's renal function to be well-preserved. (*Id.*). Even though the Physician's Assistant found "little benefit" in a referral to another urologist in light of Gordon's refusal of the prescribed nephrectomy, he placed the matter for review. (*Id.*). Accordingly, because the medical records indicate Gordon was treated for his kidney issues and offered a surgery, which he refused, Gordon's claim of deliberate indifference to his kidney issues is also meritless.

Finally, Gordon alleges he is being denied treatment for his knee, hip, back, and foot. (Doc. No. 22 at 33). But, as with the other claims, the record indicates he sought and was treated for each of these areas. Specifically, the medical records show that Gordon was diagnosed with primary localized osteoarthritis in the lower leg and had previously had right knee reconstruction while incarcerated. (Doc. No. 50 at 30-31). Because these musculoskeletal issues were not function-limiting, conservative measures including Tylenol and low-impact exercise were prescribed. (*Id.* at 31). As with the other claims, Gordon's deliberate indifference claim regarding musculoskeletal

issues is meritless because he did receive medical attention for this condition, and I have no reason to second guess the treatment he received.

In sum, because the MTC Defendants provided treatment for these ailments, Gordon's deliberate indifference claim must fail. Further, because there is sufficient evidence of this treatment, Gordon's numerous pending discovery-related requests and motions ultimately seeking access to other medical records and a second opinion of his various medical conditions in an effort to defeat summary judgment on this claim are denied. (Doc. Nos. 70, 78, 79, 80). Finally, because MTC Defendants are granted judgment as a matter of law on all claims, Gordon's motion to defer consideration of the MTC Defendants' motion is denied, as moot. (Doc. No. 60).

## V. REMAINING MOTIONS

### A. MOTION FOR PRELIMINARY INJUNCTION

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). To make such a showing, the plaintiff "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20; *see also Bonnell v. Lorenzo*, 241 F.3d 800, 809 (6th Cir. 2001). "As long as there is some likelihood of success on the merits, these factors are to be balanced, rather than tallied." *Hall v. Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524, 527 (6th Cir. 2017); *but see Winters*, 555 U.S. at 22-24 (treating these factors as quasi-elements) ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction.") (emphasis in original). Since none of Gordon's claims are successful on the merits, Gordon's motion for preliminary injunction is denied. (Doc. No. 80).

### B. MOTIONS TO STRIKE

Under Fed. R. Civ. P. 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The purpose of this motion "'avoid[s] the expenditure of time and money that must arise from litigating spurious issues by dispensing with' them early in the case." *Operating Engineers Local 324 Health Care Plan v. G & W Const. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015) (citation omitted). Such motions are disfavored. *Id.*

The movant must demonstrate the challenged matter "has no bearing on the subject matter of the litigation and that its inclusion will prejudice the defendant[ ]." *See* 2 Moore's Federal Practice § 12.37[3] (3d ed. 2017). Motions to strike are aimed at material contained in pleadings. *See Fox v. Michigan State Police Dep't*, 173 Fed. Appx. 372, 375 (6th Cir. 2006).

In this case, the Defendants seek to strike the following filings: (1) Plaintiff's Request for Issuance of Subpoenas, (Doc. No. 70); (2) Plaintiff's Rule 46 Motion, (Doc. No. 71); and (3) Plaintiff's Reply to Defendants Opposition to Plaintiff's Motion for Preliminary Injunction & Physical Examination, (Doc. No. 84). Defendants do not allege these filings are unrelated to the subject matter of the litigation or will prejudice Defendants in any way. Rather, Defendants contend these filings by the *pro se* Plaintiff are improper and untimely. As such, I find Defendants' motions to strike to be an improper vehicle for their requested relief.

While I appreciate these *pro se* filings may be untimely and improper, I find the better course of action is to deny these filings, as discussed above, rather than strike them. *See, e.g.*, *Finfrock v. Ohio Dep't of Rehab. & Corr.*, No. 3:17-cv-1264, 2018 WL 2095820, at *2-*3 (N.D. Ohio May 7, 2018) (citing cases). Therefore, Defendants' motions to strike are denied. (Doc. Nos. 73, 75, & 85).

### VI. CONCLUSION

For the foregoing reasons, MTC Defendants are granted judgment on the pleadings of Gordon's First Amendment retaliation and Eighth Amendment conditions of confinement claims

and are granted summary judgment of Gordon's Eighth Amendment deliberate indifference claim. (Doc. Nos. 36 & 59). The motion to dismiss filed by the judicial Defendants is granted. (Doc. No. 53). And the motion for judgment on the pleadings filed by Defendants Mohr and Wilson is granted. (Doc. No. 56). Finally, any claim against Spectrum Reporting LLC is dismissed *sua sponte* under 28 U.S.C. § 1915(e)(2)(B).

Additionally, denied are the following filings by Gordon: (1) motion for a protective order of medical records, (Doc. No. 60); (2) motion to defer consideration of the MTC Defendants' motion, (Doc. No. 61); (3) motion for extension of time to respond to judicial Defendants' motion to dismiss, (Doc. No. 65); (4) motion for leave to amend the complaint, (Doc. No. 67); (5) request for issuance of subpoenas, (Doc. No. 70); (6) motion/objection to my previous order, (Doc. No. 71); (7) motion to compel production, (Doc. No. 78); (8) motion to enter default judgment, (Doc. No. 79); and (9) motion for preliminary injunction and physical examination, (Doc. No. 80). Further, all of the MTC Defendants' motions to strike are also denied. (Doc. Nos. 73, 75, & 85). Because no claims remain, the case is closed and MTC Defendants' motion for a decision or conference is denied, as moot. (Doc. No. 90).

I certify, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

So Ordered.

                                                          s/ Jeffrey J. Helmick
                                                          United States District Judge